IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Angela Tyner, *individually and as Personal Representative of the Estate of Joey Matthew Tyner*, <br><br>     Plaintiff, <br><br>  v. <br><br>Kershaw County; Kershaw County Sheriff's Office; Southern Health Partners; and Charles Bush, *M.D.*, <br><br>     Defendants. | Civil Action 2:17-cv-02131-BHH-MGB <br><br><br>**REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

This case was removed from the Kershaw County Court of Common Pleas on August 11, 2017. (Dkt. No. 1.) On August 24, 2017, Plaintiff filed a Motion to Remand (Dkt. No. 8); Defendants oppose Plaintiff's motion (Dkt. No. 12; Dkt. No. 13). A telephonic hearing was held on the motion on November 29, 2017. (Dkt. No. 22.) For the reasons set forth herein, the undersigned recommends granting Plaintiff's Motion to Remand (Dkt. No. 8).

## FACTUAL BACKGROUND

Plaintiff filed the instant action against Defendants Kershaw County; Kershaw County Sheriff's Department; Kershaw County Detention Center (the "Detention Center" or "KCDC"); Southern Health Partners; and Charles Bush, M.D. in the Kershaw County Court of Common Pleas on August 11, 2016. (*See* Dkt. No. 1-4.)[1] As noted above, one year later, on August 11, 2017, the instant action was removed to the United States District Court for the District of South Carolina. (*See* Dkt. No. 1.) Shortly before the instant action was removed--on July 7, 2017--Plaintiff filed an action in the United States District Court for the District of South Carolina against Michael Alston, Linda Bradshaw, Officer Brooks, James Butler, Ruth Covington-Leitner, Officer Davis, John

---

[1]Plaintiff removed the Kershaw County Detention Center as a Defendant in the case *sub judice* when she filed her Amended Complaint. (*See* Dkt. No. 1-5.)

1

Durant, Chene Graham, Evelyn Rabon, Peggy Spivey, Marlon Stukes, Ervin Whack, and Officer Chevonne Workman. (*See generally* Dkt. No. 1 in Civ. A. No. 2:17-cv-01790-BHH-MGB.) Both of these lawsuits arise out of the death of Joey Matthew Tyner ("Mr. Tyner" or the "Decedent") at the Kershaw County Detention Center. (*See generally* Dkt. No. 1-5 in 2:17-cv-02131-BHH-MGB; Dkt. No. 1 in 2:17-cv-01790-BHH-MGB.)[2]

In the case *sub judice*, Plaintiff brings "negligence/gross negligence" as well as survival and wrongful death claims against Defendants Kershaw County; Kershaw County Sheriff's Department; and Charles Bush, M.D. (*See generally* Dkt. No. 1-5.) Plaintiff alleges that she "(as the wife) is the duly appointed Personal Representative of the Estate of Joey Matthew Tyner, having been so appointed by the Kershaw County Probate Court" on November 3, 2014. (Am. Compl. ¶ 1.) According to Plaintiff, Defendant Southern Health Partners "had a contractual relationship with the Kershaw County Detention Center, Kershaw County, and/or Kershaw County Sheriff's Office[] to provide medical care and services to detainees/inmates located at and in the custody of the [Kershaw County] Detention Center." (Am. Compl. ¶ 4.) Plaintiff alleges that Defendant Dr. Bush "was acting individually, as an independent contractor, and as a servant, agent, or employee of Southern Health Partners, Inc." and that "a doctor/patient relationship existed" between Dr. Bush and the Decedent. (Am. Compl. ¶ 5.)

Plaintiff further alleges that the Decedent had "a history of drug and alcohol abuse/addiction," and he "had a number of health and mental health issues to include depression, post-traumatic stress disorder and high blood pressure." (Am. Compl. ¶ 8.) Plaintiff alleges as follows:

---

[2]There is a Motion to Consolidate pending in *Tyner v. Graham et al.*, Civ. A. No. 2:17-cv-01790-BHH-MGB. (*See* Dkt. No. 9 in 2:17-cv-01790-BHH-MGB.) In that motion, the defendants in that case seek to consolidate *Tyner v. Graham*, Civ. A. No. 2:17-cv-01790-BHH-MGB, with *Tyner v. Kershaw County et al.*, Civ. A. No. 2:17-cv-02131-BHH-MGB. Plaintiff opposes consolidating the two cases.

> 9. The decedent's pattern of substance abuse, combined with his chronic mental illnesses, le[d] to multiple arrests. Those arrests further exacerbated the decedent's depression and triggered suicidal ideations. In fact, records received from Kershaw County reflect multiple references to the decedent's history of suicide attempts. Additionally, Medical Screening forms prepared by Southern Partners on July 12, 2013 and May 30, 2013 specifically refer to the decedent's long-standing mental health problems including on July 12th: "6 years ago--suicide attempt, 1-1/2 years ago-hung self. . .". The Kershaw County Detention Center Mental Health Referral Form dated July 12, 2013 describes the decedent as "depressed, anxious, talks constantly about previous suicide attempts. . .". The Medication Administration Forms obtained from Kershaw County include prescriptions for the period February 2012 through November 2013 to include Citalopram (anti-depressant), Hydroxyzine (anxiety), Lexapro (anxiety and major depression disorder), Celexa (anxiety), Divalproex (treatment for manic phase of bipolar disorder), and Valporic Acid (bipolar disorder). The medical records obtained from SCDC chronic[le] the decedent's long interaction with jail personnel for treatment of his mental health problems. Specifically, his history of previous suicide attempts are reflected in the records no fewer than 16 times. These records were available to the Defendants upon his admission to the Detention Center on July 9, 2014.

(Am. Compl. ¶ 9.)

Plaintiff alleges that on July 9, 2014, the Kershaw County Sheriff's Office arrested the Decedent and transferred him to the Kershaw County Detention Center. (Am. Compl. ¶ 11.) According to Plaintiff, by that time, the Decedent "had been drinking heavily and using drugs for at least the 24 hours prior," and "[b]ased upon his physical and mental condition upon presentation, he should have been taken directly to the hospital for examination and treatment before ever being taken to the Detention Center." (Am. Compl. ¶ 11.) Plaintiff alleges that, upon the Decedent's arrest, the Decedent "was clearly under the influence of alcohol and drugs," and "[i]t seems very likely that any police officer, correctional officer and/or jail medical personnel who came into contact with the decedent following his arrest on July 9, 2014 (with any training or experience whatsoever) should have easily been able to tell that the decedent was extremely impaired." (Am. Compl. ¶ 12.)

Plaintiff alleges that upon his arrival at the Detention Center, and despite his "long medical history that was noted to include bipolar disorder, PTSD, anxiety, alcohol intoxication, and drug abuse, the decedent was not referred to a mental health physician for a proper mental health

evaluation," and the Decedent was not placed on suicide watch. (Am. Compl. ¶ 14.) Plaintiff contends "the failure of jail personnel and Southern Health Partners staff to recognize that the decedent presented with a mental health emergency; that the decedent was a threat to himself; and that the decedent needed to be properly evaluated and examined at this time at a mental health facility by a mental health specialist were all . . . gross deviations from the acceptable standard of medical care." (Am. Compl. ¶ 14.) Plaintiff states,

> [T]he failure of the jail and Southern Health Partners staff to provide the decedent with proper and emergent medical care including referring him to a mental health specialist, or to consider and implement voluntary/involuntary commitment was a gross deviation in the acceptable standard of medical care. At a minimum, if released into KCDC custody, the failure of jail and Southern Health Partners staff to order that the decedent be placed on suicide watch . . . was a gross deviation in the acceptable standard of care. Such failure . . . contributed to the overall deterioration of the decedent's mental illness that eventually led him to kill himself on July 13, 2014.

(Am. Compl. ¶ 20.)

Plaintiff alleges that "[b]ased upon the improper intake/medical screening performed by KCDC, the decedent was improperly classified and sent to an unsupervised cell by himself, not on suicide watch." (Am. Compl. ¶ 25.) Plaintiff further alleges that the "policies and procedures of the Detention Center required that regular cell checks on each inmate be performed at least once every thirty (30) minutes," and "video footage produced by the Detention Center clearly show[s] officers and other Detention Center employees failing to perform the checks as required and at different times than what is shown on the handwritten cell check logs." (Am. Compl. ¶ 26.) Plaintiff alleges the Decedent was found hanging in his cell "by the very sheet provided to him by the correctional staff." (Am. Comp. ¶ 27.) Plaintiff states, *inter alia*, "The combined failure of all the Defendants to recognize the decedent's ongoing, emergent and immediate need of medical and mental care from July 9, 2014 through July 14, 2014 was a gross deviation in the acceptable standard of care that contributed directly to the decedent's pain, suffering and untimely death." (Am. Compl. ¶ 28.) As noted above, Plaintiff brings "negligence/gross negligence" as well as survival and wrongful death

4

claims against the Defendants. (*See generally* Am. Compl.) Plaintiff seeks actual, consequential, and punitive damages in the instant action. (*See* Dkt. No. 1-5 at 16 of 45.)

## DISCUSSION

In Plaintiff's Motion to Remand, Plaintiff asserts the instant action should be remanded to the Kershaw County Court of Common Pleas because "this Court does not possess subject-matter jurisdiction over the claims asserted herein." (Dkt. No. 8 at 1.) Plaintiff states,

> [S]ubject matter jurisdiction does not exist because there is indisputably no complete diversity of citizenship between adverse parties, and because there is no federal question jurisdiction. The state court action has been pending in the Kershaw County Court of Common Pleas since August of 2016 between nondiverse parties and involves no federal questions or causes of action. Plaintiff further requests an Order of this Court requiring payment of just costs and any actual expenses, including attorney fees, incurred as a result of the improper removal of this action.

(*Id.*) Plaintiff asserts that "[i]n an effort to avoid the obvious lack of federal subject matter jurisdiction," Defendants contend "the filing of Plaintiff's separate federal civil rights suit," *Tyner v. Graham et al.*, Civ. A. No. 2:17-cv-01790-BHH-MGB, in July of 2017 "changes the nature of the allegations in the state court action and creates federal question jurisdiction over the state court action." (Dkt. No. 8 at 1-2.) Plaintiff further asserts that "[e]ven if these cases were to be consolidated, they would not lose their separate character and the jurisdictional analysis of each case would necessarily have to be made separately." (*Id.* at 3.) Plaintiff additionally contends "this Court may only consider consolidation of cases properly before it, and must first consider this Motion to Remand and the jurisdictional issues raised herein before it begins to consider whether consolidation would be proper or advisable." (*Id.*) Plaintiff states, "Because there is no independent basis upon which this Court could find diversity or federal question jurisdiction in the state court action, this Court must remand the state court action and cannot consolidate the actions as demanded by Defendants." (*Id.* at 4.)

5

Defendants "agree[] that there is not complete diversity of citizenship among the adverse parties." (Dkt. No. 12 at 3.)[3] They contend, however, that "there is federal question jurisdiction such that removal of this matter and consolidation" with *Tyner v. Graham et al.*, Civ. A. No. 2:17-cv-01790-BHH-MGB, "is proper." (Dkt. No. 12 at 3.) Defendants state, *inter alia*,

> Plaintiff argues her state law complaint fails to raise a federal cause of action and, thus, i[s] not removable. However, Plaintiff's state law complaint only omits particular claims that would confer federal jurisdiction as evidenced by the fact she brought a separate federal action asserting, essentially, the exact same claims. . . . Plaintiff artfully pleads questions of federal law in her complaint, especially in the light of her subsequent federal filling which basically mirrors this case, inasmuch as the gravamen of her complaint deals with Defendants' purported deliberate indifference to her decedent's mental state such that it le[d] directly to his death by suicide.
>
> Plaintiff's attempts to defeat federal jurisdiction are especially galling given her subsequent filing of the federal case, *Tyner v. Graham, et al.*, Case No. 2:17-cv-01790-BHH-MGB. This matter, which expressly asserts federal claims against the named defendants, is based on the same facts and legal issues and is asserted against the individual employees of the Kershaw Defendants for the same actions complained of in the removed action. The facts have been available to Plaintiff for over a year and Plaintiff waited until just days before the expiration of the applicable statute of limitations before filing her companion case asserting the same allegations as in the removed case. By her own actions Plaintiff admits that the removed case should be before this Court and Kershaw Defendants' removal is proper.

(Dkt. No. 12 at 3-4.) Citing *Gunn v. Minton*, 568 U.S. 251 (2013), Defendants assert the removed complaint "necessarily raises a substantial federal issue directly in dispute--in this case, whether Kershaw Defendants, by and through their employees, disregarded Plaintiff's decedent's civil rights." (*Id.* at 4.) Defendants assert Plaintiff "is trying an end-run around federal jurisdiction and should not be permitted to evade this Court's jurisdiction by omitting an explicit request for a remedy--in this action--that is being sought in the companion case." (*Id.* at 5.)

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v.*

---

[3]Defendants Southern Health Partners and Charles Bush, M.D. joined in the Response in Opposition filed by Defendants Kershaw County and Kershaw County Sheriff's Office. (*See* Dkt. No. 13; *see also* Dkt. No. 12.)

6

*Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). On a motion to remand, courts are obligated to "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (quoting *Mulcahey*, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151 (citing *In re Business Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1993); *Cheshire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F. Supp. 1098, 1102 (D.S.C. 1990)).

The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441, which states, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also Mulcahey*, 29 F.3d at 151. As there is no allegation of diversity between the parties, the propriety of removal depends upon whether this case falls within the "federal question" jurisdiction as set forth in 28 U.S.C. § 1331. *See Mulcahey*, 29 F.3d at 151. That section states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

If Plaintiff's claims do not "aris[e] under the Constitution, laws, or treaties of the United States," remand is proper. *Dixon*, 369 F.3d at 816 (quoting 28 U.S.C. § 1331). "The vast majority of lawsuits 'arise under the law that creates the cause of action.'" *Id.* (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). In the instant case, it is clear that South Carolina law creates the at-issue causes of action. (*See generally* Am. Compl.)

When the causes of action are created by state law, the "inquiry does not end there." *Dixon*, 369 F.3d at 816. Instead, the court must determine "whether [the] case is within the 'small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331." *Id.* (quoting *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996)).

In *Gunn v. Minton*, 568 U.S. 251 (2013), the Supreme Court stated that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. If "all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id*. (quoting *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 313-14 (2005)). "If a defendant fails to establish any of these elements, the claim does not arise under federal law pursuant to the substantial federal question doctrine, and removal is therefore unjustified." *Overhead Door Corp. v. Assa Abloy Entrance Sys. Greenville, Inc.*, 234 F. Supp. 3d 716, 721 (D.S.C. 2017) (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005)).

The undersigned concludes that the removal was improper and therefore recommends granting Plaintiff's Motion to Remand (Dkt. No. 8.) In order to prevail on her negligence claim, Plaintiff must prove the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." *Carolina Chloride, Inc. v. Richland Cnty*., 394 S.C. 154, 163, 714 S.E.2d 869, 873 (2011) (quoting *Tanner v. Florence Cnty. Treasurer*, 336 S.C. 552, 561, 521 S.E.2d 153, 158 (1999)).[4] As to Plaintiff's claims for wrongful death and survival, they too are based upon negligence; "the plaintiff in a wrongful death action must establish that the wrongful act or negligence of the defendant caused the death of the decedent." *Land v. Green Tree Servicing, LLC*, 140 F. Supp. 3d 539, 545 (D.S.C. 2015); *see also* S.C. CODE ANN. § 15-5-90 ("Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all injuries to the person or to personal property shall survive both to and against the personal or real

---

[4]Gross negligence "is the failure to exercise slight care. [It] has also been defined as a relative term, and means the absence of care that is necessary under the circumstances." *Etheredge v. Richland Sch. Dist. One*, 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000) (citations omitted).

representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, any law or rule to the contrary notwithstanding.").

Nor do Plaintiff's claims for negligence, survival, or wrongful death "necessarily raise a stated federal issue, actually disputed and substantial, which [this] federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).[5] Plaintiff does not need to show a violation of the Decedent's federal rights in order to establish Defendants' liability. *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("[T]he mere presence of a federal issue in a state cause of action does not confer federal-question jurisdiction."); *Dixon*, 369 F.3d at 816-17 ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." (citing *Mulcahey*, 29 F.3d at 153)); *Mulcahey*, 29 F.3d at 153 ("[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist."); *see also Smith v. S.C. Community Bank*, Civ. A. No. 3:13-00344-MBS, 2013 WL 4056310, at *1, 5 (D.S.C. Aug. 9, 2013) (granting the plaintiff's motion to remand, finding that the plaintiff's claims for wrongful discharge, breach of contract, breach of contract with fraudulent intent, and breach of the implied warranty of good faith and fair dealing do not "necessarily depend on the resolution of a substantial question of federal law," where the plaintiff alleged "that the Defendant failed to follow various federal laws and regulations relating to banks and discharged Plaintiff as a result of her seeking to follow such laws and regulations" and

---

[5]In their Notice of Removal, Defendants Kershaw County and Kershaw County Sheriff's Office assert removal is timely because the case was removed "within thirty days of first receipt" of the "courtesy copy of the Summons and Complaint in the Federal Action" of *Tyner v. Graham et al.*, Civ. A. No. 2:17-cv-01790-BHH-MGB, "from which it was first ascertainable that the case had become removable and should be consolidated" with the case *sub judice*. (*See* Dkt. No. 1 at 2.) Respectfully, it is the opinion of the undersigned that such a position is untenable. With this assertion, the removing Defendants have conceded there is no basis for removal on the face of the Amended Complaint. If Plaintiff's claims in the Amended Complaint arose under federal law, surely they did so when the Amended Complaint was filed on November 14, 2016. (*See* Dkt. No. 1-5.) However, the removing Defendants did not seek to remove this action when the Amended Complaint was filed; instead, they removed the case on August 11, 2017. The filing of the separate lawsuit--albeit arising out of the same circumstances--does not "create" jurisdiction in the case *sub judice*. *See infra* p. 10-11.

stating, "Plaintiff does not need to show a violation of federal banking law in order to establish Defendant's liability for any of her causes of action. This is because a violation of federal banking law does not need to be found in order for liability to be imposed on Defendant as a result of Plaintiff's allegations in support of her claims for wrongful discharge, breach of contract, breach of contract with fraudulent intent, and breach of the implied warranty of good faith and fair dealing."); *Goforth v. Nev. Power Co.*, 101 F. Supp. 3d 975, 978 (D. Nev. 2015) (remanding case where the plaintiff asserted, *inter alia*, state law claims of wrongful death and negligence, stating, "Proof that Defendants violated OSHA regulations is only one method whereby Plaintiffs may establish that the equipment provided by Defendants . . . was defective. Plaintiffs have also set forth alternative and independent state law theories for showing that the equipment was defective.").

Likewise, the mere fact that a related action is pending in federal court is not a basis of removal. *See Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 456 (6th Cir. 1996) ("The supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would be efficient.") (citations omitted); *Fabricius v. Freeman*, 466 F.2d 689, 693 (7th Cir. 1972) ("That a related case was pending in federal court was not in itself sufficient grounds for removal under 28 U.S.C. § 1441."); *Fuese v. Broan-Nutone, LLC*, Civ. A. No. DKC 10-2174, 2010 WL 3446872, at *1-2 (D. Md. Aug. 31, 2010) (concluding, where the defendant removed the case from state court "reasoning that a related action by the homeowner already pending in this court provided supplemental jurisdiction over this case," that removal was improper and stating, "[I]f Plaintiff's claim had been brought or consolidated with the Sloan action in state court prior to removal to this court, it might have been removable along with the larger Sloan claim. But, it was not consolidated in state court and cannot be independently removed so that it can be consolidated here."); *In re Estate of Tabas*, 879 F.Supp. 464, 467 (E.D. Pa. 1995) ("[T]he supplemental jurisdiction statute does

not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action.").

The undersigned notes Defendants' contention that this case should be consolidated with *Tyner v. Graham et al.*, Civ. A. No. 2:17-cv-01790-BHH-MGB. However, the undersigned is of the opinion that Plaintiff's Motion to Remand should be decided prior to any consolidation. In *Payne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 75 F. App'x 903, 904 (4th Cir. 2003), the Fourth Circuit concluded that the district court should not have treated two cases "as a single, consolidated case for purposes of determining whether to remand." The plaintiffs in *Payne* first filed an action in state court; it was subsequently removed. *Id*. The plaintiffs also filed a separate action in federal court, and at the request of the parties, the district court consolidated that two cases. *Id*. The Fourth Circuit found that the "district court should have addressed the propriety of remanding the two cases--the removed case and the federal case--independently," stating, *inter alia*, ""[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause." *Id*. at 906 (internal quotation marks and citations omitted). In light of the foregoing, the undersigned recommends deciding the Plaintiff's Motion to Remand prior to deciding the issue of consolidation. *See Payne*, 75 F. App'x 903; *Mungo v. Enterprise Bank of S.C.*, Civ. A. No. 2:11-cv-0089-CWH & 2:11-cv-0482-CWH, 2011 WL 13214542, at *7 (D.S.C. Sept. 26, 2011) ("To consolidate two cases, a court must first have jurisdiction over each action individually." (citing *Owens–Corning Fiberglass Corp. v. Brandt Constr. Co.*, 826 F.2d 643, 647 (7th Cir. 1987)). *Cf. Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (reversing Second Circuit's dismissal for want of appellate jurisdiction, concluding that "[p]etitioners' right to appeal ripened when the District Court dismissed their case, not upon eventual completion of multidistrict proceedings in all of the consolidated cases").

In the case *sub judice*, as in *Fuese*, the removing defendants have "stretche[d] . . . removal jurisdiction past the breaking point." *Fuese*, 2010 WL 3446872, at *2. In light of the foregoing, the undersigned recommends granting Plaintiff's Motion to Remand (Dkt. No. 8).[6]

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Plaintiff's Motion to Remand (Dkt. No. 8) be GRANTED and that this action be REMANDED to the Court of Common Pleas for Kershaw County, South Carolina.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 4, 2017
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[6]In the Motion to Remand, Plaintiff also asserted this court should "award just costs and any actual expenses, including attorney fees, incurred as a result of the improper removal of this action." (Dkt. No. 8 at 4.) Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the Supreme Court stated,
> [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.

*Martin*, 546 U.S. at 141 (citations omitted). Although the undersigned concludes that removal was improper, and that the case should be remanded, the undersigned does not recommend awarding attorney's fees. It does not appear that Defendants were acting in bad faith, and as Defendants noted during the telephonic hearing, there is no binding authority, directly on point, indicating that removal was forbidden. *See, e.g., Crawford v. C. Richard Dobson Builders, Inc.*, 597 F. Supp. 2d 605, 612 (D.S.C. 2009) (declining to award attorney's fees and stating, "[I]f Defendants believed they had a reasonable opportunity to prevail on such a claim and keep the case in federal court, they must not be punished for attempting to do so.").

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).